## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Sean Maher, being duly sworn, states:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent employed by the Office of Export Enforcement ("OEE"), Bureau of Industry and Security ("BIS"), of the United States Department of Commerce ("DOC"). I have been employed as a Special Agent with the DOC since June 2023. Prior to my tenure as a Special Agent, I was employed as a federal law enforcement officer with the United States Customs and Border Protection ("CBP"), of the Department of Homeland Security ("DHS") from February 2003 to June 2023. I served as a Task Force Officer with Homeland Security Investigations ("HSI"), Immigration and Customs Enforcement ("ICE"), of the DHS assisting with criminal investigations of drug trafficking, money laundering, firearms trafficking, and violations of U.S. export control regulations. I graduated from the Criminal Investigator Training Program after having completed approximately 500 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and am authorized by law to conduct investigations into alleged violations of federal law. Through my training and experience, I am familiar with the means by which individuals use computers and information networks to commit various crimes.

2. I make this affidavit in support of a criminal complaint charging Kirill Gordei ("GORDEI") with one count of Export of Commerce Control Item, in violation of 50 U.S.C. § 4819 ("the "Subject Offense").

3. This affidavit summarizes an investigation into GORDEI's criminal activities

1

which was initiated in September 2023. As described below, GORDEI is the President of Apelsin Logistics Inc. ("Apelsin"), a freight forwarding company, located in Hallandale Beach, Florida. A federal investigation into the unlawful export of U.S. origin goods to Russia revealed that GORDEI and his company, Apelsin, were a freight forwarder of choice for individuals and entities seeking to unlawfully send goods, including a mass spectrometer, to Russia in violation of U.S. export laws and regulations. As specifically described herein, GORDEI conspired with others, including representatives ("Individual-1" and "Individual-2") of a company located in Moscow, Russia ("Russia Company-1") that is a producer and distributor of building blocks, novel reactive intermediates for combinatorial chemistry, and discovery research in life sciences, to unlawfully export out of the United States a mass spectrometer.

4.     The facts in this affidavit come from my training and experience, my personal observations, my review of records, and information obtained from other agents, officers, investigators, or witnesses. I submit this affidavit for the limited purpose of establishing probable cause for the requested complaint; as such, I have not included each and every fact known to me concerning this investigation.

5.     Based upon my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that GORDEI has committed a violation of the Subject Offense.

## APPLICABLE LAWS AND REGULATIONS

6.     Through various laws and regulations, the United States restricts the export of certain items including defense articles, dual-use goods and technology, and other items that affect the national security and foreign relations of the United States. In addition, various laws

regulations require exporters of goods from the United States to provide the government with accurate information regarding exports.

## Export Control Reform Act

7. On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). See 50 U.S.C. § 4801 et seq. ECRA provides permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774.

8. ECRA provides that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled" for various purposes. 50 U.S.C. § 4811. To that end, ECRA grants the President the authority to control: "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. Id. at § 4812.

9. ECRA granted to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813. Pursuant to that authority, the DOC, BIS reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the EAR. In particular, the EAR restricts the export of items that could contribute to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions

depend on several factors, including the technical characteristics of the item, the destination country, the end-user[1] and the end-use of the item.

10. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), set forth in Title 15, Code of Federal Regulations, Part 774, Supplement No. 1. Items listed on the CCL are categorized by Export Control Classification Numbers ("ECCN"),[2] each of which has export control requirements depending on the destination, end-use, and end-user.

11. Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute, including the EAR. *See* 50 U.S.C. § 4819(a)(l). Potential violations include engaging "in any conduct prohibited by or contrary to", or refraining "from engaging in any conduct required by this title, the Export Administration Regulations, or any order, license or authorization issued thereunder" (§ 4819(a)(2)(A)); aiding, abetting, or inducing "the doing of any act prohibited, or the omission of any act required by this title, the Export Administration Regulations, or any order, license or authorization issued thereunder" (§ 4819(a)(2)(B)); soliciting or attempting "a violation of this title, the Export Administration Regulations, or any order, license or authorization issued

---

[1] An end-user is a person or other entity "abroad that receives and ultimately uses the exported or reexported items. The end-user is not a forwarding agent or intermediary but may be the purchaser or ultimate consignee." (15 C.F.R. § 772.1)

[2] The ECCN is a designation that an item, which can be a tangible or intangible (i.e., software or technology), is controlled because of its specific performance characteristics, qualities, or designed-end use. Unlike an EAR99 designation, which is a broad basket category, ECCNs are much more narrowly defined and are focused on product categories. An ECCN is five-digit alphanumeric designation that categorizes an item based on the nature of the product, i.e., type of commodity, software, or technology and its respective technical parameters.

thereunder" (§ 41819(a)(2)(C)); conspiring or acting "in concert with one or more other persons in any manner or for any purpose to bring about or to do any act that constitutes a violation of this title, the Export Administration Regulations, or any order, license or authorization issued thereunder" (§ 4819(a)(2)(D)); ordering, buying, selling, transferring, forwarding, and transporting items to be exported from the United States with knowledge that such conduct is "a violation of this title, the Export Administration Regulations, or any order, license or authorization issued thereunder" (§ 4819(a)(2)(E)); making any false or misleading representation and/or falsifying or concealing any material fact to an official of the United States in the course of any action subject to the EAR (§ 4819(a)(2)(F)); engaging in any transaction or taking any other action with "intent to evade the provisions of this title, the Export Administration Regulations, or any order, license, or authorization issued thereunder" (§ 4819(a)(2)(G)).

12. Since February 24, 2022, BIS has implemented a series of stringent export controls that restrict Russia's access to technologies and other items that it needs to sustain its attack on Ukraine. As of April 8, 2022, license requirements for exports, reexports and transfers to or within Russia were expanded to cover all items on the CCL. See 87 Fed. Reg. 12226 (March 3, 2022); 87 Fed. Reg. 22130 (April 14, 2022); 15 C.F.R. § 746.8.

13. On March 3, 2022, BIS imposed additional license requirements for exports, reexports and transfers to or within Russia of any items subject to the EAR that were identified under certain Schedule B or Harmonized Tariff Schedule 6 ("HTS") numbers. See 87 Fed. Reg. 12856 (March 8, 2022); 15 C.F.R. Part 746, Supp. No. 4. HTS codes take their first six digits from the corresponding Harmonized System ("HS") code, which is a standardized numerical method of classifying traded products that are used by customs authorities around the world.

14.     Pursuant to U.S. law and regulations, exporters or their authorized agents, such as shippers or freight forwarders, are generally required to file the Electronic Export Information ("EEI") through the Automated Export System ("AES") where, among other reasons, an export license is required or the value of the commodity being exported is more than $2,500. 15 C.F.R. § 758.1. The EEI requires an exporter to list, among other things, the destination country, the ultimate consignee's name and address, the intermediate consignee's name and address, and a description of the commodity to be exported. Failure to file the EEI or providing false or misleading information in the EEI is a violation of ECRA (*see, e.g.,* 50 U.S.C. § 4819(a)(2)(F)), the EAR (*see* 15 C.F.R. Part 758), 13 U.S.C. § 305 and the Foreign Trade Regulations (*see* 15 C.F.R. Part 30). As of June 29, 2020, all exports to Russia of items on the CCL, regardless of value, required an EEI filing. 15 C.F.R. § 758.1(b)(10).

15.     A material part of the EEI and AES, as well as other export filings, is information concerning the end-user and ultimate destination of the export. The identity of the end-user may determine whether the goods: (a) may be exported without any specific authorization or license from the U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

16.     Under 50 U.S.C. § 4819(a)(2)(A), it is unlawful for anyone to conspire to "engag[ing] in any conduct prohibited by or contrary to, or refrain[ing] from engaging in any conduct required by this subchapter, the Export Administration Regulations, or any order, license, or authorization issued thereunder." Any item "subject to the EAR" may not be exported without a license if it is subject to the EAR listed in supplement no. 4 to this part to or within

6

Russia or Belarus. 15 C.F.R. § 746.5(ii). The supplement no.4 to Part 746 prohibits the export of Mass Spectrometers with HTS code 9027810000.

## PROBABLE CAUSE

### Background on GORDEI and His Company

17. Records maintained by the State of Florida and U.S. Department of State reflect that GORDEI is a citizen of Belarus with Lawful Permanent Resident Status in the United States. He lives in Hallandale Beach, Florida.

18. Florida business registry records reflect that GORDEI is the President of Apelsin and the company is registered at the same Hallandale Beach address as listed for GORDEI.

19. I have found and observed a LinkedIn profile in the name of GORDEI. The profile indicates that GORDEI is the "President" of "Apelsin Logistics" located in St. Petersburg, Russia and has been so since December 2020.

20. Apelsin has two websites, apelsinlogistics.ru and apelsinlogistics.com. Both are registered and hosted in Russia. However, the e-mail host for apelsinlogistics.com is Google LLC. The website, apelsinlogistics.com, lists three offices: two in the U.S. (New York and Miami) and one in St. Petersburg, Russia. The New York location appears to be a virtual office/shared office space.

21. The "About" section on the apelsinlogistics.com website states the following:

> *Logistics company APELSIN LOGISTICS renders professional services on international air and rail transportation of cargo of any type. The company has offices in Saint-Petersburg (Russia), New York (USA) and Miami (USA). Our priority direction is air travel from the USA to Russia, we also organize forwarding of cargo from Asia, South America, Europe, and Africa.*

22.     Both the apelsinlogistics.ru website and the apelsinglogistics.com website lists the company's address in Russia as: St. Gapsalskaya, 5A, off. 401 (BC "Baltika") St. Petersburg, Russia, 198035 with the same telephone contact number, +7 812-627-1327. However, the e-mail addresses are different: apelsinlogistics.ru lists kirill@apelsinlogistics.com and apelsinlogistics.com lists kirill.gordei@apelsinlogistics.com.

23.     GORDEI uses the following e-mail addresses: info@apelsinlogistics.com, kirill.gordei@apelsinlogistics.com, and kirill@apelsinlogistics.com.

24.     Based on a review of lawfully obtained e-mail communications, I have learned the information stated below.

### Export of a Mass Spectrometer to Russia

25.     At all times relevant to this affidavit, the Orbitrap Exploris GC 240 Mass Spectrometer (the "CCL Item")[3] was classified under ECCN 3A233 and HTS number 9027810000 and controlled for nuclear nonproliferation reasons and required a license from BIS to export to Russia. The CCL Item, valued at over $600,000, delivers high data quality and versatility to accelerate scientific discovery for academic, industry research, government and omics laboratories.

26.     On or about August 4, 2023, GORDEI (kirill@apelsinlogistics.com) received an e-mail from Individual-1 at Russia Company-1 regarding the export of the CCL Item.[4] Individual-

---

[3] The Orbitrap Exploris GC 240 mass spectrometer's manufacturer is a company headquartered in Waltham, Massachusetts ("United States Company-1). However, that model mass spectrometer is manufactured by their subsidiary company in Bremen, Germany.

[4] In the paragraphs that follow, I quote from numerous of the above referenced e-mail communications between GORDEI and Russia Company-1. These communications were

8

1 wrote that the CCL Item was purchased from a company in San Diego, California ("United States Company-2") and that a company in Uzbekistan ("Uzbekistan Company-1") paid for the CCL Item. Individual-1 instructed GORDEI that United States Company-2 "cannot be reflected in the documents." Individual-1 attached two documents in Russian: the data specification sheet for the CCL Item and information on Uzbekistan Company-1.

27. On or about August 5, 2023, GORDEI sent a response email to Individual-1 with the instructions for the master air waybill ("MAWB") and house air waybill ("HAWB"). The MAWB lists the shipper as a freight forwarding[5] company ("MA Company-1") headquartered in Chelsea, Massachusetts and the consignee as a freight forwarding company in Bayrakli, Turkey (Turkey Company-1). GORDEI wrote the following for the HAWB information:

> *Shipper: Please provide the information for the actual sender's company located in the United States.*
> *Consignee: You provide data to a company from Uzbekistan.*

28. On or about August 7, 2023, Individual-1 e-mailed GORDEI, "Hello Kirill, We can offer one of the following companies at your discretion:" and listed the names of five companies.[6]

29. On or about August 9, 2023, GORDEI e-mailed a representative of MA Company-1 requesting a quote for air freight from United States Company-2's address to Istanbul, Turkey.

---

conducted in Russian and were translated into English by a Russian translator, so any quotes were taken from the English translated e-mails and documents.

[5] A freight forwarder is a person or company that facilitates the movement of cargo with carriers (i.e., truck, rail, sea, or air).

[6] Based on context, I believe Individual-1 is advising GORDEI to pick one of the five companies listed to use as the shipper for the HAWB. All five companies appear to be based in the United States.

30.     On or about August 10, 2023, Individual-1 e-mailed GORDEI and attached an invoice, packing list, and Shipper's Letter of Instruction ("SLI")[7] for the CCL Item. The invoice is from a company in Ithaca, New York (United States Company-3)[8] showing the purchase of one Orbitrap Exploris GC 240 Mass Spectrometer for $687,889.00 USD with HS code 9027810000 and the ship to is listed as Turkey Company-1 in Turkey.

31.     On or about August 11, 2023, Individual-1 sent an e-mail to GORDEI and wrote the following:

> Good afternoon, Kirill,
>
> I have sent a letter:
>
> Regarding the letter from [United States Company-1]:
>
> Chromatograph equipment is under EU and US sanctions on export of scientific equipment to the RF. This instrument requires an export license from the US government. The reference for the requirement is 15 CFR 746.5 Supplement No. 4
>
> [United States Company-1] now has to report on all sales of scientific equipment listed in the Suppl. No. 4 list of HTS codes. If reported or detected by US Customs, the purchaser can be fined and every export we make may will likely be inspected.
>
> Since May 19, 2023, all HTS-6 commodities in chapter 39, 84, 87, and 90 shipped from the USA to Armenia, Kazakhstan, or Kyrgyzstan are presumptively assumed to be destined for the RF.

---

[7] A Shipper's Letter of Instruction is a shipping document that provides shipping instructions for the freight forwarder. This document is usually filled out by the exporter.

[8] On December 20, 2023, the Export Compliance Coordinator for United States Company-3 confirmed to me that they did not sell the CCL Item. The coordinator wrote, "I can confirm this is nothing from [United States Company-3] here in Ithaca NY. None of my documents look like this at all, someone has used our information and placed on other documents. Attached is what all my documents look like. All my documents are also hand signed in Blue Ink. They also spelled my last name wrong; it is ... I can confirm Neither of the 2 parties listed on these documents are known to [United States Company-3]." The coordinator confirmed to me that United States Company-2 was a prior customer of United States Company-3.

> HTS-6 Chapters 39 and 90 cover most chemistry and life science equipment, supplies, accessories, and reagents.
>
> All commodities in these chapters require a US export license from the US Dept. of Commerce, Bureau of Industry and Security (BIS) or they will be detained by US customs until an export license is approved.
>
> https://www.federalregister.gov/documents/2023/05/23/2023-10774/implementation-of-additional-sanctions-against-russia-and-belarus-under-the-export-administration
>
> We have decided to change the name of the exporter as a precaution to avoid verification since the previously listed [United States Company-3] is the equipment manufacturer[9]. Enclosed in the attachment are the corrected documents. Please review them and await your comments.
>
> Sincerely,
>
> [Individual-1]

Individual-1 attached the corrected documentation: invoice, packing list, SLI and Form BIS-711[10].

The invoice and packing list now reflect a new exporter located in Hainesport, New Jersey ("United States Company-4")[11]. The Form BIS-711 indicated that the ultimate consignee,

---

[9] This statement is incorrect since the CCL Item was manufactured by United States Company-1. United States Company-3 does sell mass spectrometers, but they don't sell mass spectrometers manufactured by United States Company-1.

[10] The Form BIS-711, *Statement by Ultimate Consignee and Purchaser*, is an official U.S. government document that is used to certify who is the ultimate consignee and what is the end-use of exported items. This form is signed by the ultimate consignee, purchaser, and U.S. exporter.

[11] On October 3, 2023, OEE Boston received a phone call from the Vice President of Operations for United States Company-4, who confirmed that the invoice, packing list, and SLI were not from or completed by United States Company-4. However, United States Company-4 confirmed that they had previously given a quote to United States Company-2.

Uzbekistan Company-1, would be reselling the CCL Item to another entity in Uzbekistan. The BIS-711 was filled in but not signed by any parties.

32. On or about August 11, 2023, GORDEI sent an e-mail to MA Company-1 and attached the invoice and packing list, which falsely stated that the seller of the CCL Item was United States Company-4. The "Bill To" section of the invoice lists Uzbekistan Company-1.

33. On or about August 17, 2023, Individual-1 sent an e-mail to GORDEI with corrected documents and attached the updated invoice, packing list, SLI, and BIS-711 form. United States Company-4 is still listed as the seller but the purchase price for the CCL Item has been changed to $47,889.00 USD on the invoice and SLI.

34. On or about August 21, 2023, Individual-1 sent an e-mail to GORDEI with alindachem@gmail.com in the body of the e-mail. Later that same day, GORDEI sent an e-mail to MA Company-1's Chicago office asking that they contact the "shipper" at alindachem@gmail.com to arrange pickup of the shipment. The Chicago office began to communicate with alindachem@gmail.com about this pickup. E-mails from alindachem@gmail.com had a signature block identifying them as a representative ("Individual-2") of Russia Company-1.

35. On or about August 21, 2023, Individual-1 sent an e-mail to GORDEI inquiring if "Turkey" will be able to send the CCL Item to Moscow, Russia and attached two documents: invoice and packing list. The invoice lists the seller as Uzbekistan Company-1 and the buyer is listed as a company in Moscow, Russia ("Russia Company-2").[12] Later that same day, GORDEI

---

[12] The address in Russia for this company is the same address for Russia Company-1.

sent an e-mail to Turkey Company-1 confirming that they can ship the CCL Item to Moscow, Russia by air and attached the same two documents listed above.

36.     On or about August 23, 2023, GORDEI sent an e-mail to Turkey Company-1 advising them that the consignee in Russia is Russia Company-2 and provided a contact e-mail address, which is the same e-mail address used by Individual-1.

37.     On August 25, 2023, an EEI was filed in connection with this export. The filed EEI identified the CCL Item as "Electrical Mass Spectrometers" with a Schedule B/HTS Number of 9027810000. The EEI reflected that the CCL Item is classified as ECCN EAR99 and that no license is required for export. Uzbekistan Company-1 is listed as the "Ultimate Consignee."

38.     On or about August 26, 2023, Individual-2 sent an e-mail to MA Company-1 and attached a corrected SLI, which falsely listed the value of the CCL Item as $47,889.00.

39.     On August 26, 2023, the CCL Item was exported from Los Angeles, California to Frankfurt, Germany.

40.     On August 27, 2023, the CCL Item departed Frankfurt, Germany and arrived at Istanbul, Turkey on August 28, 2023.

41.     On or about August 28, 2023, Turkey Company-1 sent an e-mail to GORDEI advising him that the estimated departure date of the CCL Item from Turkey was going to be August 29, 2023, and attached an air waybill issued by a Russian airline.

42.     On or about August 30, 2023, Turkey Company-1 sent an e-mail to GORDEI stating, "Hi Kirill ETD is going to be today at 22:00 so you should receive arrival notification tomorrow early in the morning."

43. On or about August 30, 2023, a representative of MA Company-1 e-mailed GORDEI an invoice for the shipment of the CCL Item with instructions to transfer the funds to MA Company-1 in Massachusetts.

44. On September 14, 2023, a wire transfer was made to MA Company-1 by GORDEI as payment for services.

45. As set forth above, GORDEI unlawfully exported the CCL Item to Russia by among other things, fraudulently listing the ultimate consignee as Uzbekistan with United States based freight forwarders. At all times relevant to this affidavit, neither GORDEI nor his co-conspirators or agents obtained the necessary license from BIS to export the CCL Item to Russia.

## CONCLUSION

46. Based on the information set out above, I believe probable cause exists to conclude that from on or about August 4, 2023 to on or about August 30, 2023, GORDEI together with individuals associated with Russian Company-1 did knowingly and willfully export, attempt to export, conspire to export, and attempt to cause and did cause the export of the CCL Item from the United States to Russia, without first having obtained a license and written approval from BIS. All in violation of Title 50, United States Code, Section 4819(a)(1), 4819(a)(2)(A)-(G); and Title 15 Code of Federal Regulations, Sections 736.2(b)(1), 736.2(b)(6), 746.5(a)(1)(ii), 746.8(a)(1).

47. I respectfully request that the court therefore issue a criminal complaint charging GORDEI with one count of conspiracy to violate the Export Control Reform Act in violation of 50 U.S.C. §§ 4819(a)(1), 4819(a)(2)(A)-(G). I additionally request that an arrest warrant be issued on the criminal complaint.



Respectfully submitted,

/s/ Sean Maher

Sean Maher, Special Agent
Bureau of Industry and Security,
Office of Export Enforcement

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. P. 4.1

on    February 15, 2024
        Date



Hon. M. Page Kelley
United States Magistrate Judge