UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 24-cr-10100-MJJ |
| KIRILL GORDEI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS
OR, ALTERNATIVELY, FOR A *FRANKS* HEARING**

The United States respectfully opposes the Defendant's Motion to Suppress or, Alternatively, for a *Franks* Hearing. Dkt. No. 63. The defendant has failed to show that the relevant affidavit lacks probable cause. To the contrary, the affidavit details a clearly fraudulent and unlawful export of a Mass Spectrometer destined for Russia. Furthermore, the defendant has failed to make the relevant showing for a *Franks* hearing. None of the alleged misstatements or omissions would have much, if any, bearing on probable cause. Nor does the defendant grapple with the requirement that any false statement or omission be intentional and knowing or reckless.

For those reasons, described in more detail herein, the court should deny the defendant's motion.

**BACKGROUND**

***U.S. Export Control Laws***

Through various laws and regulations, the United States may restrict the export of specific items that may affect the national security or foreign policy of the United States, or may restrict the shipment of items from the United States to specific end users. In short, U.S. export

controls may be based around restrictions regarding particular technologies, or regarding particular end users, or some combination of both.

In particular, the Export Control Reform Act ("ECRA") provides that the President may control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by the United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to specific" categories of items and information. 50 U.S.C. § 4812(a). Pursuant to that authority, the Department of Commerce has promulgated specific regulations relating to exports, known as the Export Administration Regulations ("EAR"). Among other things, the EAR impose licensing and other requirements for certain items to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another. *See* 15 C.F.R. §§ 730-774. Willfully violating, attempting to violate, conspiring to violate, or causing a violation of ECRA's provisions or any regulations, order, license, or other authorization issued thereunder (such as the EAR) carries criminal penalties. 50 U.S.C. § 4819.

The most sensitive items and technology subject to EAR controls are specified on the Commerce Control List ("CCL"), and are categorized by Export Classification Control Numbers ("ECCN"), each of which has export control requirements depending on the destination, end use, and end user. 15 C.F.R. § 774, Supp. No. 1. On February 24, 2022, in response to Russia's invasion of Ukraine, the United States Department of Commerce imposed new license requirements on exports and re-exports to Russia. As of April 8, 2022, all items on the CCL required a license to go to Russia. *See* Volume 87, Federal Register, Page 22,130 (published Apr. 14, 2022). These rules were subsequently codified at 15 C.F.R. § 746.8.

**THE EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT
SHOULD NOT BE SUPPRESSED**

A finding of probable cause to support a search warrant does not demand proof beyond a reasonable doubt. *United States v. Coombs*, 857 F.3d 439, 446 (1st Cir. 2017); *see United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012) ("[p]robable cause does not require either certainty or an unusually high degree of assurance"). Rather, it "demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched." *Id*. In considering a motion to suppress, "a court asks whether the totality of the circumstances set forth in the affidavit demonstrates probable cause to search the target premises, with deference given to the reasonable inferences the issuing magistrate may have drawn from the attested facts." *United States v. Dumornay*, 2006 WL 3050813 at *2 (D. Mass. Oct. 25, 2006) (*citing United States v. Greenberg*, 410 F.3d 63, 66-67 (1st Cir. 2005)); *see also United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996) (the reviewing court must "examine the affidavit in a practical, common sense fashion, and accord considerable deference to reasonable inferences the issuing magistrate may have drawn from the attested facts") (brackets and quotation marks removed). Indeed, a magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Even in "doubtful or marginal cases," the reviewing court should defer to the magistrate's determination. *Greenberg*, 401 F.3d at 67 (*citing United States v. Barnard*, 299 F.3d 90, 92-93 (1st Cir. 2002)); *Zayas-Diaz*, 95 F.3d at 111.

Here, the defendant's motion rests primarily on an argument that the search warrant affidavit did not specifically state that Mr. Gordei unlawfully exported items *to Russia*. *See* Memorandum of Law ISO Motion to Suppress, Dkt. No. 64 ("Memo."), p. 1. But when reviewing all of the facts and circumstances set forth in the affidavit, along with any reasonable

inferences, it is clear that the affidavit sets forth a fair probability – i.e., probable cause – that there was an unlawful shipment to Russia and that evidence of that crime would be within the defendant's email. For example:

- The defendant, using the target email, provided the Chelsea forwarder an invoice and packing list showing that the seller was a scientific equipment provider in New Jersey, but with a pickup address indicating a different scientific equipment provider in San Diego. Ex. A. ¶ 22.

- After the export occurred, law enforcement contacted the scientific equipment provider in New Jersey, and provided them with the invoice, packing list, and shipper's letter of instruction for the shipment. An employee of the New Jersey provider informed law enforcement that the documents were fraudulent, and another employee informed law enforcement that they had previously received a request for a quote from the San Diego provider – additional and damning indications that a fraudulent export had taken place. *Id.* ¶ 25.

- One of the parties to the transaction was contacted via an email address that had a signature block reading "Alinda Chemical Trade Company." Open-source research by law enforcement indicated that Alinda Chemical Trade Company was located in Moscow, Russia. *Id.*, ¶ 23.

- Furthermore, the contact phone number for the Alinda Chemical email account started with +7, the country code for Russia, and the recovery e-mail was hosted by Yandex.ru, a Russian provider. IP information for the account indicated that the user of the account logged in from Russia. *Id.*, ¶ 29.

- A social media profile for the defendant reflected that he was located in St. Petersburg, Russia. *Id.*, ¶ 28.

- When the defendant initially contacted the Chelsea forwarder, he stated that the item was intended to go to the Republic of Uzbekistan, a former Soviet republic. *Id.*, ¶ 20.

In short, the affidavit clearly lays out information from which any person could fairly believe that a fraudulent export had taken place. Based on the fact that the relevant shipping documents were fraudulent, it is hard to arrive at *any* conclusion other than that a fraudulent export had taken place. That, alone, should be sufficient for probable cause. Added to that is additional evidence to suggest that the item was in fact destined for Russia – *not* Uzbekistan, as

the defendant had represented to the Chelsea forwarder. *Cf.* Memo. at 4 ("The entire discussion in SA Quinlan's affidavit concerned a proposed shipment not to Russia but to *Uzbekistan*") (emphasis in original). Given the information tying both Alinda Chemical and the defendant to Russia, and the fraudulent nature of the shipment, the only reasonable inference to be drawn from the facts in the affidavit is that the shipment was destined for Russia.[1]

Furthermore, "even if a warrant issues upon insufficient showing of probable cause, suppression may be inappropriate if the officers involved have exhibited objective good faith." *Coombs*, 857 F. Supp. 3d at 446 (*citing United States v. Floyd*, 740 F.3d 22, 32 (1st Cir. 2014)). Notably, a law enforcement agent would not be justified in acting in objective good faith where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923. As described above, the affidavit is not so lacking in probable cause. For the same reasons, therefore, the court cannot conclude that law enforcement were acting in bad faith when they executed the search warrant after its approval by the magistrate judge.

## THERE IS NO BASIS FOR A *FRANKS* HEARING

When incorrect information is obtained in a search warrant affidavit, a defendant may be entitled to a *Franks* hearing before the trial court. But a defendant is entitled to a *Franks* hearing "only if he first makes a substantial preliminary showing of the same two requirements that he must meet at the hearing." *United States v. O'Neal*, 17 F.4th 236, 244 (1st Cir. 2021) (quotation marks omitted). Those are (1) that a "false statement or omission in the affidavit was made

---

[1] Indeed, the background portions of the affidavit are directly related to unlawful exports to Russia, making it clear that an unlawful export to Russia was the basis of the investigation. *See also* Ex. A., ¶ 2 ("I am currently investigating KIRILL GORDEI for exporting controlled U.S.-origin commodities to Russia"); ¶ 12 (discussing the imposition of export controls on Russia).

knowingly and intentionally or with reckless disregard for the truth," and (2) that "the false statement or omission was necessary to the finding of probable cause." *Id*. (quotation marks omitted). With respect to omissions, "the omission of a particular detail, without more, is not enough to satisfy the *mens rea* element of the *Franks* test." *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015). Recklessness can be inferred from the fact of omission only if "the omitted information was *critical* to the probable cause determination." *Id*. None of the bases which the defendant advances, either individually or collectively, reach the threshold for a *Franks* hearing.

### *SA Quinlan's Email to the Chelsea Forwarder*

The defendant claims that Special Agent Quinlan's email to the Export Manager at the Chelsea forwarder "would have completely undermined any suggestion that the facts and circumstances of his shipment supplied probable cause to believe criminal export crimes had taken place." Memo. at 12. But a review of the email indicates otherwise. The statement that "[t]here is no legal reason not to ship this" could only have been based on the information available to Special Agent Quinlan at the time. In other words, an export of the Mass Spectrometer to Turkey with a reexport to Uzbekistan was legal. The email was sent on August 15, 2023. It was not until September 8, 2023 – over three weeks later – that Special Agent Quinlan became aware that the invoice, packing list, and shipper's letter of instruction regarding the New Jersey supplier were fraudulent. Thus, Special Agent Quinlan's prior statement about the legality of the shipment was no longer valid at the time of the submission of the search warrant.

Furthermore, adding the statement to the affidavit would not "vitiate probable cause." *Tanguay*, 787 F.3d at 49 (defendant must show that the omitted information would "be sufficient

to vitiate probable cause" if included in the affidavit). Had Special Agent Quinlan included the statement, it would only have shown that the information known at the time led him to conclude the export was legal. The key information about the fraudulent shipment came later.[2] Thus, the omission of the statement had little to no bearing on probable cause and is not a sufficient basis for a *Franks* hearing.

### The "tip" from the Chelsea Forwarder

The defendant claims that the "affidavit misleadingly implied that the original contact from the Chelsea forwarder (Radius) to the Office of Export Enforcement was a 'tip' about suspected wrongdoing by Apelsin and Mr. Gordei." Memo. at 13. According to the defendant, the affidavit's failure to include information that the Chelsea forwarder told the defendant about its outreach to the Department of Commerce indicated that the original contact was not, in fact, a tip.

The defendant fails to make any showing that the omission of the communication at issue would "vitiate probable cause." *Tanguay*, 787 F.3d at 49. As a threshold matter, the affidavit does not imply that there was any "tip" at all. It sets forth a matter of fact explanation of how the Chelsea forwarder originally contacted law enforcement:

> 20. On or about August 11, 2023, the Office of Export Enforcement (OEE), Boston Field Office, was contacted by a freight forwarder in Chelsea, Massachusetts ("the Chelsea forwarder"). A freight forwarder is authorized to perform the services required to facilitate the export of the items from the United States. I learned from the Chelsea forwarder that they had

---

[2] Part of the indicia of fraud supporting the affidavit was that the invoice and packing list showed that the seller was a scientific equipment provider in New Jersey, but with a pickup address indicating a different scientific equipment provider in San Diego. Ex. A. ¶ 22. This was known to Special Agent Quinlan at the time, but the Chelsea forwarder had provided an ostensible explanation – "probably just has to do with freight location?" Ex. B, p. 3. Once the fraudulent nature of the shipping documents became known on September 8, the relevance of the pickup address in San Diego became more apparent.

been contacted by another forwarder named Apelsin Logistics about a shipment. The Chelsea forwarder and Apelsin made contact through a network of freight forwarders which serves to link forwarders in different locations with one another. Using the e-mail address info@apelsinlogistics.com and the name Kirill Gordei, Apelsin asked for a shipment of scientific equipment be sent to:

FC Marakanda 7777 LLC
OBOD MFI TEMUR A STREET 65
YANGIULSKIY REGION, TASHKENT AREA
REPUBLIC OF UZBEK 34 110820 UZ

Apelsin wrote to the Chelsea forwarder that, although the final destination was Uzbekistan, Apelsin they only wanted the Chelsea forwarder to send the consignment to:

Element Uluslararasi Nakliyat Ve Lojistik Tic. Ltd
Sehit Polis Fethis Sekin Cad. No. 4
Kat.28 D.381 282 Adalet Mah Novus Tower
Bayrakli 35 35530 Turkey

21. Apelsin explained that it would then make the arrangements to ship the consignment from Turkey to its final location in Uzbekistan. The Chelsea forwarder told me that this was likely because Apelsin did not have authorization to book cargo on airlines in the United States

22. Apelsin used info@apelsinlogistics.com to send the Chelsea forwarder an invoice and a packing list which showed that the seller was a scientific equipment provider in New Jersey. The product sold was listed as: Orbitrap Exploris GC 240 Mass Spectrometer. The pickup address listed was in San Diego, CA and appears to be the address of a different scientific equipment provider.

There is no "implication," therefore, that the communication was a tip. Nor does the affidavit use

the word "tip" at any point. Thus, the communication in Exhibit C is, at best, irrelevant – it

makes no difference that the Chelsea forwarder had informed the defendant about their outreach

to Commerce, nor does it relate to an implication about a "tip" to the Commerce department. In

any event, its inclusion in the affidavit would certainly not "vitiate" probable cause.

### *U.S. Guidance Regarding Licenses*

The defendant next claims that the affidavit omits a communication from the Chelsea forwarder to the defendant which states, in response to an inquiry from the defendant, that the exporter, not the freight forwarder, must determine whether a license is required. Memo. at 14. That information is not relevant to the affidavit, and its inclusion would not "vitiate probable cause." *Tanguay*, 787 F.3d at 49. The affidavit need not allege that the defendant was *behind* the criminal scheme, or that, as the defendant claims, that "Mr. Gordei knowing [sic] and willfully committed any export crime." Memo. at 14. Rather, it need only allege facts "sufficient to support a fair probability that *a crime has been committed* and that evidence of that crime is likely to be found within the objects to be searched." *Coombs*, 857 F.3d at 446 (1st Cir. 2017) (emphasis added). Regardless of whose responsibility it is to determine whether a license is required, and regardless of whether the defendant asked about it, the evidence proffered in the affidavit demonstrated that the defendant was involved in a scheme to conduct an unlawful export, and that evidence of that unlawful export would be found in an email account which he utilized. As a result, the communications in Exhibit D have no bearing on the probable cause determination and therefore cannot be the basis for a *Franks* hearing.

### *Submission of the EEI*

The defendant claims that the Chelsea forwarder submitted the Electronic Export Information ("EEI") and that the affidavit's omission of this fact undermines probable cause. Memo. at 15. Once again, however, the defendant misstates that it is necessary to find probable cause "to believe Mr. Gordei submitted false information [to] the U.S. government concerning

export of the mass spectrometer." *Id*. The affidavit need not allege that the defendant was the one who submitted false information to the U.S. government. Rather, it need only allege that a crime had been committed and that evidence of that crime may be found in the relevant email account. The affidavit does precisely that. Thus, the identity of the person who submitted the EEI to the U.S. government is irrelevant to the probable cause determination, and, in any event, inclusion of that information here would not "vitiate probable cause." *Tanguay*, 787 F.3d at 49.

### *The Licensing Determination*

The defendant claims that that the affidavit misleadingly states that BIS determined that the Mass Spectrometer at issue "'required a license for export' generally," when in reality "BIS… actually found that a 'license was required under 746.5(ii) of the EAR for export *to Russia*,' specifically." Memo. at. 15.

The relevant statement in the affidavit reads as follows:

> 26. On September 18, 2023, the Bureau of Industry and Security determined that the Orbitrap Exploris GC 240 Spectrometer ***exported on August 25, 2023 in this matter*** was classified under Export Classification Control Number 3A233 and Harmonized Tariff System Code 9027810000. As such, at the time it was exported from the United States, it required a license for export.

(emphasis added). This statement was accurate. As the affidavit makes clear, law enforcement was investigating whether the Mass Spectrometer was unlawfully shipped to Russia. Ex. A., ¶ 2. And, as described above, the totality of the affidavit contains probable cause to support that conclusion. Thus, the licensing determination – which was specific to the Mass Spectrometer *in this case* – was accurately described. A license *was* required for export of the Mass Spectrometer "on August 25, 2023 in this matter," because the evidence suggested that it was going *to Russia*. The licensing determination at issue is specific to the particular shipment involved in the investigation. Thus, the defendant has failed to point to a false statement or omission which

would provide the basis for a *Franks* hearing. Moreover, adding the words "to Russia" would make no difference given the context of the affidavit, which was clearly describing an unlawful export to Russia.

### *The Defendant Fails to Show that the Alleged Misstatements or Omissions Were Knowing and Intentional or Reckless*

Other than a conclusory statement on page 1 of the Memo, the defendant makes no showing that the alleged misstatements or omissions were made "knowingly and intentionally or with reckless disregard for the truth." *O'Neal*, 17 F.4th at 244. Certainly, there is nothing within the Memo to suggest *anything* knowing, intentional, or reckless on the part of the affiant. And recklessness can only be inferred from the fact of omission if "the omitted information was *critical* to the probable cause determination" – which, as described above, none of it is. *See Tanguay*, 787 F.3d at 49. Thus, the court has no basis to conclude that the defendant has satisfied his burden with respect to the *mens rea* element, either, and the motion should be denied on that ground as well.

### CONCLUSION

For the reasons stated herein, the court should deny the Defendant's Motion to Suppress or, Alternatively, for a *Franks* Hearing.

Respectfully submitted,

Date: July 21, 2025                                LEAH B. FOLEY
                                                   United States Attorney

                                          By:      */s/ Timothy H. Kistner*
                                                   Timothy H. Kistner
                                                   Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

Date: July 21, 2025                      */s/ Timothy H. Kistner*
                                         Timothy H. Kistner
                                         Assistant U.S. Attorneys

12