UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>KIRILL GORDEI,<br><br>    Defendant. | )<br>)<br>)<br>) Criminal Action No. 24-10100-MJJ<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DECISION**

October 31, 2025

JOUN, D.J.

  Defendant Kirill Gordei ("Defendant" or "Mr. Gordei") is charged with Conspiracy to Violate the Export Control Reform Act in violation of 50 U.S.C. §§ 4819. He moves to suppress evidence obtained during the execution of a federal warrant to search and seize records and data from certain user emails. Specifically, Mr. Gordei argues that the affidavit in support of the warrant did not establish probable cause to believe that evidence of criminal activity would be found in the user emails. Alternatively, Mr. Gordei requests a *Franks* hearing on the basis that the special agent who wrote the affidavit intentionally or recklessly included materially false or misleading statements and omitted other material information. For the following reasons, Mr. Gordei's Motion is <u>DENIED</u>.

**I. FACTUAL BACKGROUND**

  On October 11, 2023, Special Agent Brendan Quinlan ("SA Quinlan") applied for a federal warrant to search and seize records and data from email accounts identified as info@apelsinlogistics.com and alindachem@gmail.com (the "User Emails"). [Doc. No. 64-1]. In

1

support of the application, SA Quinlan submitted an affidavit providing the following information:

On August 11, 2023, the Office of Export Enforcement ("OEE"), Boston Field Office, was contacted by a freight forwarder[1] in Chelsea, Massachusetts ("the Chelsea forwarder"). [*Id.* at ¶ 20]. SA Quinlan learned from the Chelsea forwarder that they had been contacted by another forwarder named Apelsin Logistics ("Apelsin") about a shipment. [*Id.*]. Using the email address info@apelsinlogistics.com and the name Kirill Gordei, Apelsin requested a shipment of scientific equipment be sent to a location in Uzbekistan. [*Id.*]. Apelsin wrote to the Chelsea forwarder that, although the final destination was Uzbekistan, Apelsin only wanted the consignment sent to a location in Turkey. [*Id.*]. Apelsin explained that it would then make the arrangements to ship the consignment to its final location in Uzbekistan. [*Id.* at ¶ 21].

The Chelsea forwarder received an invoice and a packing list from Apelsin at info@apelsinlogistics.com. [*Id.* at ¶ 22]. The invoice and packing list showed that the seller was a scientific equipment provider in New Jersey, the product sold was a Orbitrap Exploris GC 240 Mass Spectrometer (the "Spectrometer"), the pickup address was San Diego, California and "appear[ed] to be the address of a different scientific provider." [*Id.*]. On August 21, 2023, Mr. Gordei sent the Chelsea forwarder's Chicago office an email asking they contact the "shipper" at alindachem@gmail.com about the pickup. [*Id.* at ¶ 23]. The Chicago office began to communicate with alindachem@gmail.com about this pickup. [*Id.*]. Emails from alindachem@gmail.com had a signature block, which read "Natalia Yanoma" and "Alinda Chemical Trade Company" and open-source research located a company by this name in

---

[1] According to the affidavit, a freight forwarder is authorized to perform the services required to facilitate the export of items from the United States. [Doc. No. 64-1 at ¶ 20].

Moscow, Russia. [*Id*.]. This Spectrometer was picked up in San Diego, exported from the United States on August 25, 2023, and arrived in Istanbul on August 28, 2023. [*Id*. at ¶ 24].

On September 8, 2023, SA Quinlan contacted the Compliance Manager for the supplier in New Jersey; OEE provided the invoice, packing list, and the shipper's letter of instruction for the Spectrometer shipment. [*Id*. at ¶ 25]. SA Quinlan then learned from the Compliance Manager that the documents were fraudulent. [*Ibid*.]. On September 18, 2023, the Bureau of Industry and Security ("BIS") determined that the Spectrometer, previously exported on August 25, 2023, required a license for export pursuant to the item being classified under Export Classification Control Number 3A233 and the Harmonized Tariff System Code 9027810000. [*Id*. at ¶ 26].

Apelsin has two websites that are both registered and hosted in Russia—apelsinlogistic.ru and apelsinlogistics.com. [*Id*. at ¶ 27]. Apelsin's website lists a phone number starting with +7, the country code for Russia and email addresses for Miami and St. Petersburg offices, along with an email account of kirill.gordei@apelsinlogistics.com. [*Id*.]. The company has addresses listed in Russia and New York.[2] [*Id*.]. A social media profile for Kirill Gordei reflects his employment as President of Apelsin Logistics and lists his location as St. Petersburg, Russia. [*Id*. at ¶ 28]. Records maintained by the State of Florida and the U.S. Department of State reflect that Mr. Gordei lives in Hallandale Beach, Florida, and that Apelsin Logistics is registered at the same Hallandale Beach address as listed for Mr. Gordei. [*Id*.]. Pertaining to alindachem@gmail.com, the contact phone number for this account starts with +7, the country code for Russia, the recovery email is from a Russian email provider, and IP login information for this account reflects that its user logged in from locations in Russia. [*Id*. at ¶ 29].

---

[2] The affidavit states that the New York office appears to be a virtual office/shared space. [*Id*. at ¶ 27].

Based on SA Quinlan's training and experience, he was aware of methods used in illegal exportation, including the potential presence of evidence related to illegal exportation being found in Google account files and records. [*Id*. at ¶¶ 31–41]. On September 12 and 28, 2023, SA Quinlan sent Google a letter and requested the company preserve records associated with the email addresses info@apelsinlogistics.com and alindachem@gmail.com, respectively, for 90 days, with both requests pursuant to 18 U.S.C. § 2703(f). [*Id*. at ¶ 30]. SA Quinlan then requested two search warrants with limitations and procedures pertaining to Google's records and data from info@apelsinlogistics.com and alindachem@gmail.com. [*Id*. at ¶¶ 49–52].

Based on the affidavit, a federal magistrate judge issued a warrant to search and seize data records from info@apelsinlogistics.com and alindachem@gmail.com. Through the executed search warrants, it was learned that on August 22, 2023, Mr. Gordei emailed a freight forwarder in Turkey and requested that it ship the Spectrometer from Turkey to Moscow, Russia.

## II.    LEGAL STANDARDS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Klyushin*, 643 F. Supp. 3d 261, 268 (D. Mass. 2022) (citing U.S. Const. amend. IV). When reviewing a probable cause determination, the Court does not undertake de novo review, but "gives 'significant deference to the magistrate judge's initial evaluation' and reverses only if there is 'no substantial basis' for concluding that probable cause existed." *Id.* (citing *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005)); *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999); *see also United States v. Taylor*, 985 F.2d 3, 5 (1st Cir.1993) (citing *United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir.1986)). "A warrant application must demonstrate probable cause to believe that (1) a crime has been

committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *Feliz*, 182 F.3d at 86. With regard to the 'nexus' element, the task of a magistrate in determining whether probable cause exists is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

Mr. Gordei seeks a so-called *Franks* hearing on his motion to suppress. An affidavit in support of probable cause is presumed to be valid. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). In order for a *Franks* hearing to be granted, a defendant must prove two separate prongs: "(1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth, and (2) that the false statement or omission was necessary to the finding of probable cause." *United States v. O'Neal,* 17 F.4th 236, 244 (1st Cir. 2021). Additionally, regarding omissions, "the omission of a particular detail, without more, is not enough to satisfy the *mens rea* element of the *Franks* test." *United States v. Tanguay,* 787 F. 3d 44, 49 (1st Cir. 2015).

### III.  DISCUSSION

#### A.  **Probable Cause**

Although a close call, I defer to the magistrate judge's determination that SA Quinlan's affidavit sets forth probable cause that there was an unlawful shipment to Russia and that evidence of that crime would be within the User Emails. Firstly, the affidavit shows that Apelsin has two websites hosted and registered in Russia, the websites' phone numbers start with a Russian country code (+7) and lists Russian addresses. The affidavit further shows that Mr.

Gordei is president of Apelsin and, using the info@apelsinlogistics.com email, provided a fraudulent invoice and packing list to the Chelsea forwarder with addresses of two distinct scientific equipment providers. Mr. Gordei asked the Chelsea forwarder to contact alindachem@gmail.com or Alinda Chemical Trade Company located in Moscow, Russia to arrange pickup of the Spectrometer. The contact phone number for alindachem@gmail.com starts with a Russian country code (+7), the recovery email is from a Russian email provider, and the IP login information for the account reflects that its user logged in from locations in Russia. The Spectrometer required a license to export to Russia. Taken together, I cannot find that there was no substantial basis for concluding that probable cause existed.

### B. *Franks* Hearing

Mr. Gordei alleges that SA Quinlan, in his affidavit, omitted the fact that he had initially approved the very export Mr. Gordei was charged for. Mr. Gordei is correct that SA Quinlan initially approved the shipment on August 15, 2023. However, significantly, at that time, SA Quinlan did not have complete information regarding the shipment. It was only three weeks later, on September 8, 2023, when he wrote the affidavit, that SA Quinlan discovered that the invoice, packing list, and shippers' letter of instruction regarding the New Jersey scientific provider were fraudulent. Mr. Gordei does not provide any evidence to show that this omission was either made knowingly, intentionally, or with reckless disregard for the truth, or, in employing the omission standard, that it rose to the requisite *mens rea* to grant a *Franks* hearing. Moreover, the omission has no bearing on the ultimate finding of probable cause.

Mr. Gordei further alleges that the affidavit mistakenly implied that the Chelsea forwarder's communication with the United States Department of Commerce was a "tip" regarding suspected wrongdoing on the part of Mr. Gordei and Apelsin. According to Mr.

Gordei, the affidavit's failure to include information that the Chelsea forwarder told the Mr. Gordei about its outreach to the Department of Commerce indicated that the original contact was not, in fact, a tip. Here, the affidavit sets forth a matter-of-fact explanation of how the freight forwarder originally contacted law enforcement. It does not use language of a tip, and the fact that Mr. Gordei was informed about the Chelsea forwarder's outreach to the Department of Commerce does not vitiate probable cause.

Mr. Gordei also argues that the affidavit misleadingly stated that the September 18, 2023 license determination required a license for export generally, whereas a license was needed for an export to Russia specifically. According to Defendant, in the absence of any evidence that the item was exported to Russia, there was no probable cause to believe any export violation had been committed. Here, the totality of the affidavit contains probable cause to support that there was an unlawful shipment to Russia and that evidence of that crime would be within the User Emails.

Finally, Mr. Gordei claims that the affidavit omits certain material facts: (1) that Mr. Gordei asked the Chelsea forwarder about whether it could assist with a different shipment to Russia, and (2) that the Chelsea forwarder submitted the electronic export information to the U.S. government based on information provided by Alinda, not Apelsin or Mr. Gordei. With regard to the first fact, Mr. Gordei seems to suggest that it was the responsibility of the scientific provider, not Apelsin, a freight forwarder, to determine whether a license was needed. But regardless of whose responsibility it was to determine whether a license is required, and regardless of whether the Mr. Gordei asked about it, the evidence proffered in the affidavit demonstrated that the Mr. Gordei was involved in a scheme to conduct an unlawful export through the use of fraudulent shipping documents, and that evidence of that unlawful export

7

would be found in an email account which he utilized. With regard to the second fact, again, the affidavit need not allege that Mr. Gordei was the one who submitted false information to the U.S. government. Rather, it need only allege that a crime had been committed and that evidence of that crime may be found in the relevant email account.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and in the alternate, his Motion to hold a *Franks* hearing are DENIED. [Doc. No. 63].

SO ORDERED.

/s/ Myong J. Joun
United States District Judge