UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIRILL GORDEI,<br><br>Defendant. | )<br>) Criminal No. 24-cr-10100-MJJ<br>)<br>) <u>Count One</u>:<br>) Conspiracy to Commit Offenses against the<br>) United States (18 U.S.C. § 371)<br>)<br>) <u>Count Two</u>:<br>) Violation of the Export Control Reform Act (50<br>) U.S.C. § 4819(a)(1), 4819(a)(2)(A)-(G) and<br>) 4819(b)<br>)<br>) <u>Count Three</u>:<br>) Smuggling Goods from the United States;<br>) Aiding and Abetting (18 U.S.C. § 554(a) and 2)<br>)<br>) <u>Forfeiture Allegation</u>:<br>) 50 U.S.C. § 4819(d)(1), 18 U.S.C. §<br>) 981(a)(1)(C) and 28 U.S.C. § 2461(c), 19<br>) U.S.C. § 1595(a)(d)) |

<u>SUPERSEDING INDICTMENT</u>

At all times material to this Superseding Indictment:

<u>General Allegations</u>

1.      On August 13, 2018, the President signed into law the National Defense
Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See*
50 U.S.C. § 4801 *et seq.* ECRA provided permanent statutory authority for the Export
Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774.

2.      ECRA provided that "the national security and foreign policy of the United

1

States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA granted the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA granted to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

3.      Through the EAR, the U.S. Department of Commerce's ("DOC") Bureau of Industry and Security ("BIS") reviewed and controlled the export from the United States to foreign destinations of certain items. In particular, BIS placed restrictions on the export and reexport of items that it determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user and the end use of the item.

4.      The most sensitive items subject to EAR controls were identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which was subject to export control requirements depending on destination, end use and end user of the item.

5.      Since Russia's full-scale invasion of Ukraine on February 24, 2022, BIS has implemented a series of stringent export controls that restrict Russia's access to the technologies and other items that it needs to sustain its attack on Ukraine. As of April 8, 2022, license requirements for exports, re-exports and transfers to or within Russia were expanded to cover all items on the CCL.  *See* 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8. Under§ 746.8(6), applications for the export, reexport or transfer (in-country) of items that require a license under paragraph (a)(1) and (2) will be reviewed, with certain limited exceptions, under a policy of denial.

6.      On March 3, 2022, BIS imposed additional license requirements for exports, re-exports and transfers to or within Russia of any items subject to the EAR that were identified under certain Schedule B or Harmonized Tariff Schedule 6 ("HTS") numbers.  *See* 87 Fed. Reg. 12856 (March 8, 2022); 15 C.F.R. Part 746, Supp. No. 4.  HTS codes took their first six digits from the corresponding Harmonized System ("HS") code, which was a standardized numerical method of classifying traded products that was used by customs authorities around the world.

7.      An exporter generally was required to file Electronic Export Information ("EEI") through the Automated Export System ("AES") where, among other reasons, an export license was required or the value of the commodity being exported was more than $2,500.  15 C.F.R. § 758.1.  The EEI required an exporter to list, among other things, the destination country, the ultimate consignee's name and address, the intermediate consignee's

3

name and address, and a description of the commodity to be exported. Failure to file EEI or providing false or misleading information in EEI was a violation of ECRA *(see, e.g.,* 50 U.S.C. § 4819(a)(2)(F)), the EAR *(see* 15 C.F.R. Part 758), 13 U.S.C. § 305 and the Foreign Trade Regulations *(see* 15 C.F.R. Part 30). As of June 29, 2020, all exports to Russia of items on the CCL, regardless of value, required an EEI filing. 15 C.F.R. § 758.1(6)(10).

8.     Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any regulation, order, license, or authorization issued pursuant to the statute, including the EAR.

9.     At all times relevant to this Indictment, the Orbitrap Exploris GC 240 Mass Spectrometer (the "CCL Item") was classified under ECCN 3A999.b and HTS number 9027810000 and required a license from BIS to export to Russia.   The CCL Item, valued at over $600,000, delivers high data quality and versatility to accelerate scientific discovery for academic, industry research, government and omics laboratories.

10.     KIRILL GORDEI was a citizen of Belarus with Lawful Permanent Resident status in the United States.

11.     KIRILL GORDEI was the President of Apelsin Logistics ("Apelsin"), a freight forwarding company, located in Hallandale Beach, Florida.  Apelsin also has an address in Russia and two websites both of which are registered and hosted in Russia.

12.     "Russian Company-1" was located in Moscow, Russia and was a Russian producer and distributor of building blocks, novel reactive intermediates for combinatorial

4

chemistry, and discovery research in life sciences. "Individual-1" and "Individual-2" were representatives of Russian Company-1.

13.    "Turkey Company-1" was located in Istanbul, Turkey and was a freight forwarding company.

14.    "United States Company-1" was located in Chelsea, Massachusetts and was a freight forwarding company.

15.    At all times relevant to this Indictment, neither the defendant nor his co-conspirators or agents obtained the necessary license from the DOC to export the CCL Item to Russia.

## Objects and Purposes of the Conspiracy

16.    The objects of the conspiracy were to violate ECRA and to smuggle goods from the United States.

17.    The purposes of the conspiracy were to evade the prohibitions and licensing requirements of the ECRA and EAR; to profit from the export of the CCL Item from the United States, directly and indirectly, to Russia; and to conceal the prohibited activities and transactions from detection by the U.S. Government so as to avoid penalties and disruption of the illegal activities.

## Manner and Means of the Conspiracy

18.    Among the manner and means by which defendant GORDEI and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the

following:

  a. Using email and other means to communicate;

  b. Soliciting quotes from and negotiated with U.S. freight forwarders to export and re-export the CCL Item from the United States on behalf of Russian Company-1;

  c. Arranging for shipment of the CCL Item from the United States to points in Turkey, and elsewhere, to conceal the true end users and end destinations;

  d. Providing false and misleading information to the shippers and freight forwarders, to conceal the true value of the goods, the ultimate destination of the goods, and the ultimate end user of the goods; and

  e. Causing the CCL Item to be exported and re-exported from the United States and Turkey to individuals and entities in Russia without obtaining the required licenses from the Department of Commerce.

19. From on or about January 1, 2023 through on or about August 29, 2023, KIRILL GORDEI and coconspirators known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*August 2023 Shipment to Russia Company-1 in Russia*

  a. On or about August 9, 2023, GORDEI emailed U.S. Company-1 requesting a quote for air freight rates to ship the CCL Item from

California to Istanbul, Turkey;

b.  On or about August 11, 2023, GORDEI provided an invoice and packing list to U.S. Company-1 which falsely stated that the seller of the CCL Item was a New Jersey company and that the end destination for the CCL Item was Uzbekistan;

c.  On or about August 22, 2023, GORDEI emailed Turkey Company-1 requesting that it ship the CCL Item from Turkey to Moscow, Russia;

d.  On or about August 23, 2023, GORDEI emailed Turkey Company-1 listing the ultimate consignee for CCL Item 1 as Moscow, Russia with a contact e-mail for Russia Company-1;

e.  On or about August 26, 2023, Russia Company-1 provided a corrected Shipper's Letter of Instructions (SLI) to U.S. Company-1, which falsely listed the value of the CCL Item as $47,889; and

f.  On or about September 14, 2023, GORDEI made a wire transfer to U.S. Company-1 for payment for services.

## COUNT ONE
### Conspiracy to Commit Offenses against the United States
### (18 U.S.C. § 371)

The Grand Jury charges:

20.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

21.     From on or about April 25, 2023 through on or about October 6, 2023, in the District of Massachusetts and elsewhere, the defendant,

### KIRILL GORDEI,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, including individuals associated with Russian Company-1, to commit offenses against the United States, that is:

a.      to willfully export and re-export and cause the exportation and re-exportation of goods from the United States to Russia without first having obtained the required licenses from the Department of Commerce, in violation of Title 50, United States Code, Section 4819(a), and Title 15, Code of Federal Regulations, Section 764.2; and

b.      to fraudulently and knowingly export and send and attempt to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and

8

receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and object, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
Violation of the Export Control Reform Act
50 U.S.C. § 4819(a)(1), 4819(a)(2)(A)-(G) and 4819(b)

The Grand Jury further charges:

22.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

23.    Between on or about August 4, 2023 through on or about August 31, 2023, in the District of Massachusetts, and elsewhere, the defendant,

KIRILL GORDEI,

together with others, did knowingly and willfully export and re-export, attempt to export and re-export, and attempt to cause and did cause the export and re-export of the CCL Item from the United States to Russia, without first having obtained the required license or written approval from the Department of Commerce:

All in violation of Title 50, United States Code, Section 4819(a)(1), 4819(a)(2)(A)-(G) and 4819(b); Title 18, United States Code, Sections 3551 *et seq.;* Title 15 Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1), and 764.2.

10

## COUNT THREE
### Smuggling Goods from the United States; Aiding and Abetting
### (18 U.S.C. § 554(a) and 2)

The Grand Jury further charges:

24.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-19 of this Indictment.

25.     Between on or about August 4, 2023 through on or about August 31, 2023, in the District of Massachusetts, and elsewhere, the defendant,

### KIRILL GORDEI,

did fraudulently and knowingly export and send, and attempt to export and send, from the United States to a place outside thereof, that is, Russia, merchandise, articles, and objects, namely the CCL Item, contrary to laws and regulations of the United States, that is, ECRA and the EAR, and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations:

All in violation of Title 18, United States Code, Sections 554(a) and 2.

11

FORFEITURE ALLEGATIONS
(50 U.S.C.§ 4819(d)(l), 18 U.S.C. § 981(a)(l)(C), 18 U.S.C. 371, and 28 U.S.C. § 2461(c),
19 U.S.C. § 1595a(d))

26.    Upon conviction of one or more of the offenses alleged in Counts One through Three, the defendant,

KIRILL GORDEI,

shall forfeit to the United States:

(a) pursuant to Title 50, United States Code, Section 4819(d)(l), any property used or intended to be used, in any manner, to commit or facilitate the violation; constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; or constituting an item or technology that is exported or re-exported or intended to be exported in violation of Title 40, United States Code, Section 4819(a)(2)(A);

(b) pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense; and

(c) pursuant to Title 19, United States Code, Section 1595a(d), any merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and any property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or

12

sale of such merchandise prior to exportation.

27.    If any of the property described in paragraph 26 hereof as being forfeitable pursuant to Title 50, United States Code, Section 4819(d)(l), Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), or Title 19, United States Code, Section 1595a(d), as a result of any act or omission of the defendant –

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 26 above.

All pursuant to Title 50, United States Code, Section 4819(d)(l), Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), and Title 19, United States Code, Section 1595a(d).

13

A TRUE BILL

███████████████████

FOREPERSON OF THE JURY

Timothy H. Kistner
Christopher Looney
ASSISTANT UNITED STATES ATTORNEYS

District of Massachusetts: August 11    , 2026
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo
DEPUTY CLERK
                at 2:55 PM

14